**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STANLEY H. SOLVEY, | NO. 1:07-cv-00182-LJO-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JAMES YATES, et al., | (Doc.  116 ) |
| Defendants. | OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a former state prisoner proceeding pro se in this civil rights action.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Pending before the Court is Defendants' motion for summary judgment.  (ECF No. 116.)  Plaintiff has opposed the motion.  (ECF No. 120).  Defendants have filed a reply.  (ECF No. 124.)

**I.    Procedural History**

This action was initiated by civil complaint filed by Plaintiff on February 2, 2007.  The events at issue occurred at Pleasant Valley State Prison (PVSP), where Plaintiff was housed during the relevant time period.  Plaintiff names the following individual defendants employed by the California Department of Corrections and Rehabilitation (CDCR) at PVSP: Warden James Yates; Associate Warden Beels;  Chief Medical Officer Igbinosa; Sergeant (Sgt.)  H. Greene; Sgt. J. Duty; Correctional Officer (C/O) D. Chambers; M. Voss; Licensed Vocational Nurse

1  (LVN) K. Hilts; LVN Bradshaw, LVN Sellers; Medical Technical Assistant (MTA) A. Long.

2  The original complaint was dismissed with leave amend. (ECF No. 10.)  On June 20, 2007,

3  Plaintiff filed the first amended complaint on which this action proceeds. (ECF No. 11.)  On

4  April 11, 2008, an order was entered, finding that the first amended complaint stated a claim for

5  relief against the above defendants and directing service of process. (ECF No. 15.)  On August

6  22, 2008, Defendants Yates, Igbinosa, Beels, Greene, Long, Duty, Sellers and Chambers filed an

7  answer. (ECF No. 38.)  On December 18, 2008, Defendant Hilts filed an answer.  (ECF No. 48.)

8  On January 6, 2010, an order was entered by the District Court, adopting the findings and

9  recommendations of the Magistrate Judge, dismissing Defendant Voss. (ECF No. 103.)[1]  On

10 April 19, 2010, Defendants Yates, Chambers, Igbinosa, Beels, Greene, Duty, Hilts, Sellers and

11 Long filed the motion for summary judgment that is before the Court. (ECF No. 116.)  Plaintiff

12 filed opposition to the motion (ECF No. 120.)  Defendants filed a reply.  (ECF No. 124.)[2]

13 **II.    <u>Summary of Allegations</u>**

14       Plaintiff alleges that PVSP is located in a coccidiomycosis, or valley fever, endemic zone,

15 and he was knowingly released into that environment.  In September of 2005, Plaintiff became

16 very ill and was diagnosed with valley fever on October 4, 2005.  These events form the basis of

17 Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs, in

18 violation of the Eighth Amendment.   Specific allegations as to each Defendant follow.

19 ///

20

21

22       [1] On November 20, 2009, Defendant Bradshaw was ordered to show cause why he should not be required
    to file a response.  (ECF No. 95.)  On December 1, 2009, an answer to the complaint was filed by Defendant

23 Bradshaw.  (ECF No. 101.)  On April 19, 2010, counsel for Defendant Bradshaw filed a Request for Withdrawal of
    Counsel on the ground that Bradshaw had not been served. (ECF No. 119.)  On December 16, 2010, an order was

24 entered, granting the request to withdraw.  (ECF No. 125.)  On December 22, 2010, findings and recommendations
    were entered, recommending that Defendant Bradshaw be dismissed for Plaintiff's failure to provide information

25 sufficient for the U.S. Marshal to effect service of process.  (ECF No. 126.)  Objections are due on January 24, 2011.

26

27       [2] On June 23, 2008, the Court issued and sent to Plaintiff the summary judgment notice required by <u>Rand v.
    Rowland</u>, 154 F.3d 952 (9th Cir. 1998), and <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 25.)

28

## A.     Defendant Yates

Plaintiff alleges that Yates, as Warden at PVSP, has a statutory duty to provide for the health and care of inmates at PVSP.  (Am. Compl. ¶ 34.)   Plaintiff alleges that since becoming Warden, Yates had constructive and actual knowledge of the conditions at PVSP.  Id. Specifically, Plaintiff alleges that Yates knew of the infections at PVSP, yet failed to exercise "reasonable care to remedy the sickness prevalent in his institution."  (Am. Compl. ¶ 35.) Plaintiff alleges that he suffered injury as a result of "this failure to follow policy."  Id.

## B.     Defendant Igbinosa

Plaintiff alleges that Igbinosa, as the Chief Medical Officer, "knew of the hyperinfection among inmates and failed to act to protect the inmates specifically Plaintiff Solvey's health." (Am. Compl. ¶ 36.)   Plaintiff alleges that Igbinosa failed to train staff to "screen out" inmates susceptible to valley fever.  Id.    Plaintiff also alleges that the treatment he received, an antifungal medication, damaged his liver.  Id.  Plaintiff alleges that despite his requests and inmate appeals, Igbinosa failed to provide a certain treatment that, in Plaintiff's view, was necessary.  (Am. Compl. ¶ 38.)   Plaintiff also submitted numerous request to Igbinosa's office for a transfer to a "Medical Center Prison where the level of treatment would be improved and consistent."  (Am. Compl. ¶ 39.)  Plaintiff alleges that he did not receive a response to his requests.  Id.

## C.     Defendant Beels

Plaintiff alleges that Defendant Captain Beels spoke to Plaintiff regarding "the continuous deliberate indifference to the health and safety of Plaintiff."  (Am. Compl. ¶ 41.)   Plaintiff requested that Captain Beels transfer Plaintiff to a medical facility where he could receive treatment.  Beels told Plaintiff to submit a written request.   Plaintiff did so, yet did not receive any response from Beels.  Id.

///

///

3

### D.   Defendant Greene

Plaintiff alleges that Sergeant Greene failed to summon medical care for Plaintiff. Specifically, Plaintiff alleges that on April 29, 2006, "after medication had been continuously removed from Plaintiff's cell by officer Chambers, Plaintiff had deteriorated in health due to lack of medication Diflucan."  (Am. Compl. ¶ 42.)   Plaintiff advised Greene that he had valley fever and needed medical treatment for pain and seizures.  Id.   Plaintiff asked Greene to call medical staff.  Greene advised Plaintiff to submit a written request for medical treatment.  Plaintiff told Greene that he had already done so, "and received no adequate response." (Am. Compl. ¶ 43.) Plaintiff contends that Greene is liable for a failure to respond to Plaintiff's medical condition.

### E.   Defendant Duty

The allegations as to Defendant Duty relate to the removal of Plaintiff's medication from his cell by C/O Chambers.  Plaintiff alleges that Sgt. Duty failed to properly train Chambers, resulting in injury to Plaintiff.  (Am. Compl. ¶ 45.)   Sgt. Duty also refused to summon medical care for Plaintiff, despite the fact that "the rashes on Plaintiff's body became unbearable."  Id.

### F.   Defendant Hilts

Plaintiff alleges that Defendant LVN Hilts failed to administer medications to Plaintiff. Specifically, Plaintiff alleges that while he was on lockdown, "his meds were systematically forgotten by LVN and MTA staff dispensing meds."  (Am. Compl. ¶ 48.)   Plaintiff alleges that Hilts withheld Plaintiff's medication in order to torture him.  (Am. Compl. ¶ 49.)   Plaintiff alleges that on December 18, 2006, he was seen by the doctor, "and got the lidoderm patch ordered at noon as the medical staff continued to use unspecific doctor 'time' orders on lidoderm as excuse."  Plaintiff alleges that Hilts "ran back to the doctor and had doctor Phi change the times on the order to torture the Plaintiff into standing in a line to get medications for over 30 minutes."  (Am. Compl. ¶ 50.)  Plaintiff contends that this interference with the doctor's orders amounted to cruel and unusual punishment.  Id.

///

4

G.    **Defendant Long**

Plaintiff alleges that Defendant MTA Long failed to follow the doctor's orders to dispense certain medication to Plaintiff to treat his valley fever.   Specifically, the doctor prescribed "a lidoderm patch and narcotics." (Am. Compl. ¶ 51.)  MTA Long failed to dispense the medication "on numerous occasions."  Id.   Plaintiff alleges that "Long knew of my pain as a symptom of valley fever and wantonly inflicted pain upon Plaintiff by not dispensing patch as ordered." (Am. Compl. ¶ 52.)

H.    **Defendant Sellers**

Plaintiff alleges that Defendant LVN Sellers, "on numerous occasions," withheld prescribed medications from Plaintiff.  (Am. Compl. ¶ 55.)   Plaintiff specifically alleges that during the month of September 2006, while A Facility was on lockdown, Sellers "continuously failed to administer pain medication to Plaintiff's cell as prescribed by the doctor.  When Plaintiff attempted to inform the LVN Sellers of the times of the prescribed meds, LVN Sellers used arguments and excuses not to bring the forgotten meds to Plaintiff's cell."  Id.

I.    **Defendant Chambers**

Plaintiff alleges that Defendant C/O Chambers intentionally deprived him of prescribed medication.  Specifically, Plaintiff alleges that on three separate occasions in March and April of 2006, Chambers searched Plaintiff's cell and removed the medication used by Plaintiff to treat his condition.  (Am. Compl. ¶ 58.)  Plaintiff alleges that Chambers "took these meds with no regard for my health and safety in direct violation of the doctors orders."  Id.   Plaintiff went without medication for 30 days.  Plaintiff eventually underwent a spinal tap to determine the extent of the spread of the fungus.  Id.

III.  **Exhaustion**

Initially, Defendants argue that Plaintiff has failed to exhaust his available administrative remedies prior to filing suit.  "The Prison Litigation Reform Act requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions."

5

1   Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009)(citing 42 U.S.C.§ 1997e(a)).  "[T]he

2   PLRA exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93

3   (2006).  This means that a prisoner must "complete the administrative review process in

4   accordance with the applicable procedural rules, including deadlines, as a precondition to

5   bringing suit in federal court."  Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)(quoting

6   Ngo, 548 U.S. at 88).[3]

7          The failure to exhaust in compliance with section 1997e(a) is an affirmative defense

8   under which the defendants have the burden of raising and proving the absence of exhaustion.

9   Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  If the Court

10  concludes that the prisoner has failed to exhaust, the proper remedy is dismissal without

11  prejudice.  Jones v. Bock, 549 U.S. 199, 223-24 (2007); Lira v. Herrrera, 427 F.3d 1164, 1175-76

12  (9th Cir. 2005).  The Court will therefore address Defendants' argument that Plaintiff failed to

13  exhaust his available administrative remedies.

14         In support of their motion, Defendants submit the declaration of G. Duran, Appeals

15  Coordinator at PVSP.   Exhibit 2 to the declaration is a copy of an inmate grievance filed by

16  Plaintiff, Log No. PVSP-07-00226.  This grievance referenced Plaintiff's medication

17  administration times.  In this grievance, Plaintiff indicated the following: "I 602 this before

18  medical staff continuous torture me with games and arguments, due to their incompetent of med

19  distribution, I want my meds (patch also) given at noon like the previous granted 602 states."  Id.

20  Ex. 2, p.4.  This grievance was completed through the Director's Level on July 10, 2007.  Id.

21         Exhibit 3 to the Duran declaration is a copy of an inmate grievance filed by Plaintiff on

22  December 1, 2006, Log No. PVSP-06-03403.  In this grievance, Plaintiff states the following

23  issue:

24                    On 11-8-06 PVSP A Facilities were placed on lockdown status

25

26         [3] In California, there are four levels of review - informal level, first formal level, second formal level, and
    third formal level.  The third formal level constitutes the Director's decision on appeal.  Cal. Code Regs. Tit. 15, §
27  3084.5(e)(2).

28                                              6

> with meds delivered to inmates cells.  On 11-26-06 MTA Flautan
> brought morning meds but "forgot" to bring my pain patch.
> (Lidoderm 5%).  Flautan stated she'd leave a 'note' for p.m.
> medical staff.  At pm meds, MTA Long came.  Long stated that
> MTA's signed as I received this day.  This same incidence has
> happened 6-7 times since 11-8-06.

Id. Ex. 3, p. 8.   The Director's Level review of this grievance was issued on October 23, 2007.

Id. p. 1.

Page 5 of Exhibit 4 to the Duran declaration is a copy of inmate grievance, Log No. 06-01560, filed by Plaintiff on May 24, 2006.  In this grievance, Plaintiff states the issue as follows:

> C/O Chambers on several occasions you removed authorized
> critical medications from my cell.  I 602'd you on 5-4-06 and you
> "lost" my appeal and gave me no informal signed response.
> Violating 15 CCR 3084.(b)(1): 15 day informal response.  Also
> violating my right to medical care (15 CCR 3350).  Your
> interference with my treatment cause me a relapse of Valley Fever
> you failed to notify medical about my medications.

This grievance was appealed through the Director's Level, which was issued on March 22, 2007.
Id..p 1.

The Court finds that Defendants' evidence indicates that, although Plaintiff exhausted his administrative grievances regarding the conduct at issue in this lawsuit, he did not do so prior to filing suit.  Grievance No. PVSP-07-00226 was exhausted on July 10, 2007.  Grievance No. PVSP-06-03403 was exhausted on October 23, 2007, and grievance No. PVSP-06-01560 was exhausted on March 22, 2007.  This action was filed on February 2, 2007.  District Courts are required under the Prison Litigation Reform Act to dismiss actions without prejudice where prisoner failed to exhaust administrative remedies prior to filing suit but was in process of doing so when motion to dismiss was filed.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

In his opposition, Plaintiff argues generally that although he filed "numerous" appeals in an attempt to exhaust his administrative remedies, "officials" violated the regulations regarding response time.  Plaintiff also argues that the "Appeal office" screened out his appeals, "hindering the PLRAs intent on exhausting administrative remedies."  (Opp'n: 5:12-15.)

The Ninth Circuit has held that a prisoner's failure to timely exhaust his administrative

7

1  remedies is excused when a prisoner takes reasonable and appropriate steps to exhaust his

2  administrative remedies but was precluded from exhausting not through fault of his own, but by a

3  prison official's mistake.  Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) (exhaustion

4  excused when prisoner was mistakenly told that he needed to read a Program Statement to pursue

5  his grievance but the Program Statement cited was unavailable to him).   The Ninth Circuit

6  extended that reasoning to inmate appeals that were improperly screened out.  Sapp. V. Kimbrell,

7  623 F.3d 813, 823 (9th Cir. 2010).  In order to show that the grievance process was unavailable to

8  him, Plaintiff must come forward with evidence that he was excused from exhaustion due to a

9  prison official's mistake or because the inmate grievance was screened out for an improper

10  reason.  Id.

11        Plaintiff alleges that he filed an appeal regarding C/O Chambers' conduct on May 4,

12  2006.  That appeal was not answered at the informal level within fifteen days.  Plaintiff alleges

13  that this initial grievance "never reappeared or was returned by prison officials."  (Opp'n 44:10.)

14  Plaintiff filed a second appeal that was screened out for lack of supporting documentation.

15  Plaintiff filed a third appeal, referred to above , Log No. PVSP-06-01560.  Plaintiff concedes that

16  this grievance was not exhausted until March 22, 2007.  (Opp'n 44:14.)  Plaintiff argues that

17  since he filed an amended complaint on June 22, 2007, his grievance was exhausted before filing

18  suit.  There is no authority for Plaintiff's proposition.  This action was initiated by civil suit filed

19  on February 2, 2007.  McKinney clearly holds that if Plaintiff was in the process of exhausting

20  his remedies at the time the suit was filed, this action should be dismissed.  311 F.3d at 1200.

21        Plaintiff appears to argue that, although the Director's Level was not completed until

22  March 22, 2007, it should have been completed earlier.  Plaintiff argues that officials violated

23  regulations in not timely processing his grievance.  Plaintiff has not, however, come forward with

24  any evidence that the grievance process was unavailable to him.

25        Plaintiff argues that he filed an inmate grievance regarding the conduct of K. Hilts on

26  December 21, 2006.  Plaintiff refers to his Exhibit C.  Plaintiff's Exhibit C is a copy of the

27

28                                             8

1   inmate grievance, along with a screen-out form, indicating that the appeal was being screened out

2   on the ground that Plaintiff filed a duplicate appeal.   Plaintiff contends that the decision to

3   screen out his appeal was improper, as "no duplicate appeal was returned or responded to."

4   (Opp'n 46:19.)   A review of this grievance, page 4 of Plaintiff's Exhibit C, indicates that

5   Plaintiff's grievance refers to the lockdown that started on November 8, 2006, and refers to the

6   timing of Plaintiff's medication.   Although more detailed, Plaintiff is complaining of the same

7   issue as grievance No. PVSP-06-03403, filed on December 1, 2006.   Although Plaintiff may

8   disagree with the decision that the December 21, 2006, is duplicative, he has not come forward

9   with evidence that it was screened out for improper purposes.

10      Plaintiff makes similar arguments regarding grievance No. PVSP-06-03403, referred to in

11   Plaintiff's Exhibit E.   Plaintiff essentially argues that officials violated the regulations, and as a

12   result, his appeal was not exhausted until October 23, 2007.   Plaintiff does not, however, come

13   forward with any evidence that any conduct on behalf of any official rendered the appeals process

14   unavailable to Plaintiff.   Plaintiff has not come forward with any evidence that he exhausted his

15   available administrative remedies prior to filing suit.   This action should therefore be dismissed

16   for his failure to do so.[4]

17   **IV.   <u>Summary Judgment</u>**

18      Defendants also argue that there is no evidence of a disputed issue of material fact, and

19   they are therefore entitled to judgment as a matter of law.   Summary judgment is appropriate

20   when it is demonstrated that there exists no genuine issue as to any material fact, and that the

21   moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c). Under summary

22   judgment practice, the moving party

23          always bears the initial responsibility of informing the district
           court of the basis for its motion, and identifying those portions of

24

25      [4] Plaintiff indicates that if the Court finds that he has failed to exhaust his administrative remedies, The

26   Court should dismiss this action without prejudice in order for Plaintiff to re-file this action.  Because the motion for
    summary judgment is before the Court, and in the interest of judicial efficiency, the Court will address the merits of

27   the motion for summary judgment.

28                                              9

1

2

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

3

4   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

5   burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be

6   made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

7   on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery

8   and upon motion, against a party who fails to make a showing sufficient to establish the existence

9   of an element essential to that party's case, and on which that party will bear the burden of proof

10  at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the

11  nonmoving party's case necessarily renders all other facts immaterial." Id. In such a

12  circumstance, summary judgment should be granted, "so long as whatever is before the district

13  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

14  satisfied." Id. at 323.

15          If the moving party meets its initial responsibility, the burden then shifts to the opposing

16  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

17  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).    In attempting to establish the

18  existence of this factual dispute, the opposing party may not rely upon the denials of its

19  pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

20  admissible discovery material, in support of its contention that the dispute exists. Rule 56(e);

21  Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in

22  contention is material, i.e., a fact that might affect the outcome of the suit under the governing

23  law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W Elec. Serv., Inc. v. Pacific

24  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

25  the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool

26  v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

27

28                                                      10

1    In the endeavor to establish the existence of a factual dispute, the opposing party need not

2 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

3 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4 trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

5 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

6 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

7 amendments).

8    In resolving the Motion for Summary Judgment, the Court examines the pleadings,

9 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

10 any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

11 255, and all reasonable inferences that may be drawn from the facts placed before the court must

12 be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

13 Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam). Nevertheless, inferences are not drawn out

14 of the air, and it is the opposing party's obligation to produce a factual predicate from which the

15 inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

16 Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

17    Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

18 show that there is some metaphysical doubt as to the material facts. Where the record taken as a

19 whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

20 issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

21 **V.    Eighth Amendment Claims**

22    A prison official cannot be found liable under the Eighth Amendment for denying an

23 inmate humane conditions of confinement unless the official knows of and disregards an

24 excessive risk to inmate health and safety.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The

25 Court in Farmer adopted a subjective standard requiring an "inquiry into a prison official's state

26 of mind" when it is alleged that a prison official was deliberately indifferent to a substantial risk.

27

28                                              11

1  Id. at 838 (citing Wilson v. Seiter, 501 U.S. 294, 299 (1991).  To satisfy this inquiry, "the official

2  must both be aware of facts from which the inference could be drawn that a substantial risk of

3  serious harm exists, and he must also draw the inference."  Id. at 837.  Alternatively, the Court

4  rejected any possibility that an official could be held liable for " a significant risk that he should

5  have perceived but did not."  Id.  Even if it is determined that the official was subjectively aware

6  of a substantial risk, the official cannot be held liable if he acted reasonably in response to that

7  risk, "even if the harm ultimately was not averted."  Id. at 844.

8          In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate

9  medical care did not constitute cruel and unusual punishment cognizable under section 1983

10 unless the mistreatment rose to the level of "deliberate indifference to  serious medical needs."

11 In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's

12 civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere

13 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

14 Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at

15 105-06.  Plaintiff cannot prevail in a § 1983 action where the quality of treatment is subject to

16 dispute.  Sanchez v. Veld, 891 F.2d 240 (9th Cir. 1989).

17          **A.      Defendant Yates**

18          Plaintiff claims that Defendant Yates failed to supervise his subordinates, failed to protect

19 Plaintiff, and subjected Plaintiff to dangerous conditions.  Defendants correctly argue that Yates

20 cannot be held liable on the ground that, as a supervisor, he is liable for the conduct of his

21 subordinates.  Under section 1983, Plaintiff must prove that the defendants holding supervisory

22 positions personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d

23 930, 934 (9th Cir. 2002).  There is no respondeat superior liability, and each defendant is only

24 liable for his or her own misconduct.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (2009).  A

25 supervisor may be held liable for the constitutional violations of his or her subordinates only if he

26 or she "participated in or directed the violations, or knew of the violations and failed to act to

27

28                                                      12

1  prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989); <u>Corales v. Bennett</u>, 567 F.3d

2  554, 570 (9th Cir. 2009); <u>Preschooler II v. Clark County School Board of Trustees</u>, 479 F.3d

3  1175, 1182 (9th Cir. 2007); <u>Harris v. Roderick</u>, 126 F.3d 1189, 1204 (9th Cir. 1997).

4      Defendant Yates supports his motion with his own declaration.  Yates declares that in

5  2005, the medical staff at PVSP began noticing a significant increase in the number of inmates

6  suffering from valley fever.  PVSP coordinated with the CDCR and the California Department of

7  Health Services (CDHS) to investigate the infections.  In August of 2006, the CDCR and CDHS

8  issued a memorandum for identifying and removing inmates at risk for more severe symptoms if

9  exposed to valley fever while being housed at PVSP.  According to the August 3, 2006,

10 memorandum, PVSP health care staff were instructed to identify at-risk valley fever inmates and

11 immediately transfer them to other institutions where they would be less susceptible to

12 contracting valley fever.  Once enacted, these policies were followed.  (Yates Decl. ¶¶ 3-7.)

13     Yates further declares that in October of 2005, he was not aware of any substantial risks

14 posed by valley fever because there had been no completed investigation on the risk factors for

15 the serious symptoms of the disease.  Yates is not a physician, and could not treat Plaintiff or any

16 other inmate for valley fever.  Yates did not have the ability to authorize funding for extensive,

17 non-emergent prison improvements or repairs.  (<u>Id.</u> ¶¶ 9-11.)

18     Plaintiff has not alleged any facts to support a claim that Yates personally participated in

19 the alleged deprivation.   In the first amended complaint, Plaintiff alleges that Yates had "actual

20 and constructive knowledge" of the conditions at PVSP, yet failed to exercise reasonable care to

21 remedy "the sickness prevalent in his institution."  (Am. Compl. ¶¶ 34, 35.)  Defendants have

22 submitted evidence that Yates was not aware of any substantial risks to inmates in general or to

23 Plaintiff in particular.  The evidence submitted indicates that Defendant Yates responded

24 reasonably to the presence of valley fever.  Specifically, the evidence submitted by Defendant

25 Yates indicates that he acted in accordance with the memoranda from the CDHS.   The Court

26 finds that Defendant Yates has met his burden on summary judgment - Yates has come forward

27

28                                        13

1    with evidence that he did not fail to protect Plaintiff, and that he did not subject Plaintiff to a

2    dangerous condition.  The evidence submitted by Yates establishes that Yates was not

3    deliberately indifferent to a serious medical need of Plaintiff's.   The burden shifts to Plaintiff,

4    Plaintiff must come forward with  evidence that Yates knew of and disregarded a risk to

5    Plaintiff's health or safety.

6         Plaintiff declares that he contracted Valley Fever while housed at PVSP in 2005.  (Solvey

7    Decl. 6:8.)    In his declaration, Plaintiff refers to pages 1 and 2 of Exhibit J to his opposition.

8    Exhibit J consists of copies of inmate grievances and responses regarding Plaintiff's medical

9    treatment.  There is nothing in Exhibit J that indicates that Warden Yates had personal

10   knowledge of a serious risk to Plaintiff's health, and acted with disregard to that risk.   In his

11   opposition, Plaintiff argues that Yates has a statutory duty under the California Penal Code not to

12   subject Plaintiff to "cruel, corporal or unusual punishment."  (Solvey Decl. 13:10.)   The

13   gravamen of Plaintiff's argument is that "when numerous inmates become sick and have died of

14   Valley Fever at PVSP, Yates is liable."  Id.  13:25.)

15        Throughout his opposition, Plaintiff recounts in detail the conditions at PVSP, and

16   concludes that Yates had to know of the conditions, yet failed to prevent them.  Simply put,

17   Plaintiff's argument is that it is undisputed that valley fever exists at PVSP, and, due to the

18   illness of staff and inmates, Yates knew of the conditions yet failed to address them.   The courts

19   of this district have found such claims to be insufficient.  "[T]o the extent that Plaintiff is

20   attempting to pursue an Eighth Amendment claim for the mere fact that he was confined in a

21   location where Valley Fever spores existed which caused him to contract Valley Fever, he is

22   advised that no courts have held that exposure to Valley Fever spores presents an excessive risk

23   to inmate health."  King v. Avenal State Prison, 2009 WL 546212, *4 (E.D. Cal., Mar 4, 2009);

24   see also Tholmer v. Yates, 2009 WL 174162, *3 (E.D. Cal. Jan. 26, 2009)("To the extent

25   Plaintiff seeks to raise an Eighth Amendment challenge to the general conditions of confinement

26   at PVSP, Plaintiff fails to come forward with evidence that Yates is responsible for the

27

28                                              14

conditions of which Plaintiff complains."[5])  Defendant Yates cannot, therefore, be held liable for the failure to supervise his subordinates, subjecting Plaintiff to dangerous conditions, or for a failure to protect Plaintiff.  Judgment should therefore be entered for Defendant Yates.

**B.**    **Defendant Igbinosa**

Plaintiff alleges that Defendant Chief Medical Officer Igbinosa knew of the "hyperinfection" in the inmate population, yet failed to act to protect the inmates.  Plaintiff alleges that Igbinosa failed to train his staff to adequately screen for valley fever.  Plaintiff alleges that Igbinosa failed to provide the treatment that was, in Plaintiff's view, necessary, and that the treatment that was provided to Plaintiff damaged his liver.  Finally, Plaintiff alleges that Igbinosa ignored his requests for a transfer to "a Medical Center Prison where the level of treatment would be improved and consistent."  (Am. Compl. ¶¶ 36-39.)

Defendants correctly argue that Plaintiff's failure to supervise claim fails to state a claim for relief.  As noted above, there is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal, 129 S.Ct. at 1948-49.  A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor, 880 F.2d at 1045.  There are no facts alleged indicating any direct participation or involvement by Defendant Igbinosa.

In support of the motion for summary judgment, Defendant Igbinosa  submits his own declaration.  Dr. Igbinosa declares that he became the Chief Medical Officer at PVSP in February of 2006, after Plaintiff had been diagnosed with valley fever.  (Igbinosa Decl. ¶ 1.)  Dr. Igbinosa could not, therefore, be liable for failing to prevent Plaintiff's infection.  Regarding Plaintiff's request for a transfer to another facility, the evidence submitted by Defendants indicate that

---

[5] Plaintiff refers to his Exhibit F.  Exhibit F consists of a copy of a Consumer Complaint Form addressed to the Medical Board of California regarding Plaintiff's medical treatment.  Nothing in this exhibit refers to conduct by Defendant Yates, or indicates that Yates was personally aware of any constitutionally deficient medical treatment of Plaintiff.

Plaintiff did not meet the criteria for transfer to another facility.  Exhibit 1 to Dr. Igbinosa's declaration is a copy a memorandum issued by the CDHS for identifying and removing inmates at risk for more severe symptoms if exposed to valley fever while being housed at PVSP. Exhibit 2 is a copy of an updated memorandum dated November 20, 2007,  for identifying and removing inmates at risk for a worse outcome if exposed to valley fever.

After receiving the August 3, 2006, memorandum, Dr. Igbinosa instructed all PVSP physicians to review the medical files of all PVSP inmates at each visit to the medical clinic to determine which of those inmates met the transfer criteria outlined in the memorandum, and then draft a report to him for each inmate that met the transfer criteria.  (Id.¶ 17.)  Dr. Igbinosa further declares that he has reviewed the relevant portions of Plaintiff's medical file and is familiar with Plaintiff's medical history.  Plaintiff's medical file does not contain any information indicating that he met any of the transfer criteria outlined in the August 3, 2006, or November 20, 2007, memoranda.  Dr. Igbinosa never received a report recommending that Plaintiff be transferred out of PVSP or that Plaintiff was at risk of dissemination of valley fever.  Once Plaintiff contracted valley fever in October 2005, there would have been no medical reason to designate him for transfer, because he did not suffer from any of the conditions that place a person at risk for dissemination, and because PVSP medical staff provided him with the best possible medical treatment for his condition.  (Id. ¶¶ 23-26.)

The Court finds that Dr. Igbinosa has met his burden on summary judgment.  The evidence submitted by Dr. Igbinosa indicates that Plaintiff contracted the disease before Dr. Igbinosa assumed the position of Chief Medical Officer.  In his capacity as Chief Medical Officer, Dr. Igbinosa responded to the threat of valley fever.  There is no evidence that Dr. Igbinosa personally treated Plaintiff, or was deliberately indifferent to a serious condition of Plaintiff's.  The evidence indicates that Dr. Igbinosa directed the PVSP physicians to act in accord with the memoranda from the CDHS.  The evidence indicates that, in the professional view of PVSP physicians, Plaintiff did not meet the criteria for transfer.

1   The burden shifts to Plaintiff to come forward with evidence of a triable issue of material

2   fact as to whether Dr. Igbinosa knew of and was deliberately indifferent to a serious medical

3   condition of Plaintiff's.   Plaintiff argues generally that Dr. Igbinosa is responsible for the care of

4   prisoners, including Plaintiff. (Opp'n. 27:15.)   Plaintiff restates generally the allegations of the

5   amended complaint on which this action proceeds,   Plaintiff indicates that he "cannot outline all

6   the actions Igbinosa could have taken to remedy the deliberate indifference, but the Plata v.

7   Schwarzenegger outlined numerous deficiencies that were to be corrected." (Id. 28:8-9.)

8       Individual suits for relief from alleged unconstitutional prison conditions cannot be

9   brought where there is a pending class action suit involving the same subject matter.  McNeil v.

10  Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991); Gillespie v. Crawford, 858 F.2d 1101, 1103 (5th

11  Cir. 1988)(en banc).  "Individual members of the class and other prisoners may assert any

12  equitable or declaratory claims they have, but they must do so by urging further actions through

13  the class representative and attorney, including contempt proceedings, or by intervention in the

14  class action." Id.  Any asserted requests for relief should therefore dismissed.  If Plaintiff wants

15  to complain about a perceived failure to comply with the order in Plata, he may contact the

16  plaintiff's class counsel in Plata,[6]

17      Although Plaintiff argues that there are material issues of fact, he does not submit any

18  evidence that Dr. Igbinosa knew of and disregarded a serious risk to Plaintiff's health.   Plaintiff

19  disagrees with the decision regarding his transfer, but fails to offer any evidence that the failure

20  to transfer him constituted deliberate indifference, as that term is defined above.  Mere difference

21  of opinion between a prisoner and prison medical staff as to appropriate medical care does not

22  give rise to a section 1983 claim. Hatton v. Arpaio, 217 F.3d 845 (9th Cir. 2000);  Franklin v.

23  Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Plaintiff argues that Dr. Igbinosa should be liable

24  for failure to discipline medical personnel "whom violate the constitution for failing to

25

26      _____

27      [6] Counsel for the plaintiff class in Plata is Donald H. Specter at the Prison Law Office, General Delivery, San Quentin, CA 94964.

28                                          17

administer pain medications." Plaintiff offers no evidence to support his argument.   Plaintiff has

failed to allege any facts indicating the personal participation of Dr. Igbinosa in any

unconstitutional conduct, and fails to come forward with evidence that establishes a triable issue

of fact - evidence that Dr. Igbinosa knew of and disregarded a serious risk to Plaintiff's health.

Judgment should therefore be entered in Dr. Igbinosa's favor.

### C.    Defendant Beels

Plaintiff alleges that Defendant Captain Beels failed to respond to Plaintiff's request for a

transfer to a medical facility where he could receive treatment.   Beels told Plaintiff to submit a

written request for a transfer, which he did.  Beels failed to respond to the written request. (Am.

Compl. ¶ 41.)

Defendant Beels supports his opposition with his declaration.  Beels declares that as a

Facility Captain, he did not have the authority to order a medical transfer for Plaintiff.  Medical

transfer orders must come from Health Care Services at PVSP, after a medical evaluation is

performed to determine if there is a medical necessity to transfer the inmate.  (Beels Decl. ¶ 4.)

As noted above, there is no evidence that a failure to transfer Plaintiff constituted deliberate

indifference.  Further, Beels correctly argues that Plaintiff has no liberty interest in being housed

at a particular institution.  Meachum v. Fano, 427 U.S. 215, 225-27 (1976).  The Court finds that

Beels has met his burden on summary judgment.  Captain Beels has come forward with evidence

that he did not have the authority to transfer Plaintiff, and cannot therefore be liable for a failure

to do so.

In his opposition, Plaintiff re-states the allegations of the complaint that Captain Beels

should have transferred him, and disagrees with the evidence submitted by Beels that he did not

have the authority to transfer Plaintiff.  Plaintiff argues that Beels has "facilitated numerous non

adverse and adverse transfers from PVSP." (Opp'n. 20:18.)   Plaintiff argues that Beels "sits at

the head of the committee that approves transfers." (Id. 20:23.)   Plaintiff argues that a triable

issue of fact exists, as the evidence submitted by Beels indicates that he did not have the

18

authority to authorize a medical transfer.  Plaintiff contends that a triable issue of fact exists because he sought a custody, as opposed to a medical, transfer.  As noted above, Plaintiff has no constitutionally protected interest in being housed at a particular facility.  The evidence indicates that Plaintiff did not meet the criteria for a medical transfer.

Plaintiff's own evidence belies his argument.  In support of his opposition, Plaintiff refers the Court to his Exhibit D.  Exhibit D is a copy of a letter written by Plaintiff, dated May 9, 2006, and addressed to Capt. Beels.  The letter recounts the allegations set forth in the amended complaint, and clearly requests a medical transfer.  Plaintiff specifically requests that "the CMO transfer me medically."  Plaintiff offers no other evidence in support of his opposition to Defendant Beels' motion for summary judgment.  That Plaintiff wrote to Defendant Beels does not, of itself, subject Beels to liability.   The evidence submitted by Beels indicates that he did not have the authority to order a medical transfer, and Plaintiff has no protected right to be housed in a particular facility.  Judgment should therefore be entered in favor of Defendant Beels.

**D.    Defendant Greene**

Plaintiff alleges that Defendant Sergeant Greene failed to summon medical staff after Plaintiff advised Greene that he had valley fever and needed medical treatment for pain and seizures.  (Am. Compl. ¶ 42.)  Plaintiff alleges that he advised Greene of his condition on April 29, 2006, "after medication had been continuously removed from Plaintiff's cell by Officer Chambers."  Id.   Greene advised Plaintiff to submit a written request for medical treatment. Plaintiff told Greene that he had already done so, "and received no adequate response."  (Id. ¶ 43.)

Defendants submit the declaration of Sgt. Greene in support of the motion for summary judgment.  Sgt. Greene declares that when Plaintiff approached him on April 29, 2006, there was no indication that Plaintiff was in an "emergent condition."  Plaintiff advised Greene that he suffered from valley fever and needed to schedule a medical appointment because he was in pain.

1  Although it appeared to Greene that Plaintiff had a cold and chest congestion, he did not appear

2  to be in any immediate distress.  (Greene Decl. ¶ 4.)

3        Greene advised Plaintiff that, as custody staff, he did not have the authority to schedule

4  an appointment or to direct medical staff to see Plaintiff.  Greene advised Plaintiff to submit a

5  Health Care Request, which is the prison procedure for scheduling a medical appointment.

6  Plaintiff then walked to the dining hall with no further incident. (Id. ¶ 5.)  After dinner, Plaintiff

7  walked approximately one-quarter mile back to his cell.  (Solvey Depo. 89:22-25; 92:16-17.)

8        The Court finds that Defendant Greene has met his burden on summary judgment.

9  Greeene has come forward with evidence that he was not deliberately indifferent to a serious

10  medical need of Plaintiff's.  Greene's evidence indicates that Plaintiff was not in such distress

11  that Greene should have summoned immediate medical help.

12        In his opposition, Plaintiff declares that he approached Greene on April 29, 2006, and

13  advised him that he had valley fever and was suffering "extreme pain internally" from the

14  disease.  (Opp'n. 31:7.)  Plaintiff indicates that he requested Greene to summon medical care

15  because his requests for health care were not being responded to in a timely manner.  Plaintiff

16  specifically declares that Greene stated: "Fill out the form like the other 1200 inmates on the

17  yard.  Beat it!"  Id. 31:13.)  Plaintiff argues that Greene's conduct was "oppressive in nature."

18  Plaintiff argues that Greene knew that valley fever was a painful disease and could cause death.

19  That Greene did not summons medical care, in Plaintiff's view, subjects him to liability.

20  Plaintiff does not, however,  come forward with evidence that establishes a triable issue of fact as

21  to whether Greene knew of and disregarded a serious risk to Plaintiff's health.  The evidence

22  submitted by Greene indicates that, as custody staff, he did not have the authority to order

23  medical officials to treat Plaintiff.  The evidence submitted by Greene establishes, without

24  evidentiary dispute, that Plaintiff was not suffering from an emergency medical condition.

25  Plaintiff's evidence consists of his own declaration that Greene knew Plaintiff had valley fever,

26  yet refused to summon immediate medical care.  That Plaintiff believes that valley fever

27

28                                              20

1   constitutes a medical condition requiring immediate medical care does not subject Sgt. Greene to

2   liability for his failure to summon medical care.  There is no evidence that Plaintiff was not

3   treated for valley fever, or that Sgt. Greene had any authority to direct treatment for Plaintiff's

4   condition.  Judgment should therefore be entered in Sgt. Greene's favor.

5       **E.      Defendant Duty**

6       Plaintiff alleges that Duty failed to supervise Defendant Chambers when he was informed

7   through the inmate grievance process that Chambers had confiscated Plaintiff's medications.

8   Plaintiff also seeks to hold Duty liable for failing to summon medical care for Plaintiff when he

9   informed Duty that he had rashes on his body that were unbearable.  (Am. Compl. ¶¶ 45-46.)

10      Defendant Duty submits his own declaration in support of his motion for summary

11  judgment.  In 2006, Sgt. Duty was assigned as the Third Watch Facility A Yard/Dining Sergeant.

12  As such, he was responsible for overseeing correctional officers assigned to the yard and dining

13  halls.  He was not responsible for building staff, such as floor officers.  (Duty Decl. ¶¶ 1-2.)

14  Duty's involvement with Plaintiff's claim regarding confiscated medication is limited to his

15  participation in the inmate grievance process.  Duty responded to Plaintiff's grievance, including

16  advising him of the regulations regarding the improperly labeled or expired medication.  Duty

17  also declares that he provided instruction to Facility A building staff regarding the proper method

18  for disposing of confiscated medication.  At the time that Duty responded to Plaintiff's

19  grievance, C/O Chambers was no longer working at PVSP. (Id. ¶¶ 3-5.)

20      The Court finds that Duty has met his burden on summary judgment.  The evidence

21  submitted by Sergeant Duty indicates that his only involvement with Plaintiff was limited to his

22  participation in the inmate grievance process, and that his response was to instruct his staff

23  regarding proper procedures.  Actions in reviewing a prisoner's administrative appeal cannot

24  serve as the basis for liability under a § 1983 action.  Buckley , 997 F.2d , 494 495 (8th Cir.

25  1993).  The argument that anyone who knows about a violation of the Constitution, and fails to

26  cure it, has violated the Constitution himself is not correct. "Only persons who cause or

27

28                                          21

participate in the violations are responsible. Ruling against a prisoner on an administrative

complaint does not cause or contribute to the violation. A guard who stands and watches while

another guard beats a prisoner violates the Constitution; a guard who rejects an administrative

complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-

10 (7th Cir. 2007) citing Greene v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v.

McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th

Cir.1996).  The evidence submitted by Defendant Duty indicates that he was not aware of any

unauthorized taking of Plaintiff's medication, and that when he was informed via the inmate

grievance process that Plaintiff complained of improper confiscation of his medicine, he

responded appropriately.

          In his opposition, Plaintiff argues generally that Defendant Duty has an obligation under

the Eighth Amendment to ensure appropriate medical care.  Plaintiff appears to argue that Duty

knew about Plaintiff's valley fever, yet failed to act in response to this knowledge.  Plaintiff

declares that he "had brought the Chambers taking medications from Plaintiff's cell to the

attention of the supervising officers.  The officers became very aggressive with Plaintiff as if

Plaintiff was doing something wrong.  The officers crowded around Plaintiff and were very harsh

in tone of voice and reprimanding Plaintiff for even mentioning something about an officer."

(Opp'n. 36:14-19.)  Plaintiff does not, however, come forward with any evidence that Duty

participated in, or knew of and failed to prevent, any unauthorized confiscation of medication

from Plaintiff's cell.  As with the other defendants who are employed as custody staff, Duty had

no authority to direct medical personnel to respond to Plaintiff's condition.  Plaintiff offers no

evidence that Duty was deliberately indifferent to Plaintiff's serious medical needs.  Judgment

should therefore be entered in Defendant Duty's favor.

          **F.     <u>Defendant Hilts</u>**

          Plaintiff alleges that Defendant Hilts, a Licensed Vocational Nurse, failed to administer

prescribed medications to Plaintiff.  Plaintiff alleges that Hilts withheld medication in order to

torture him.  (Am. Compl. ¶ 49.)   Plaintiff specifically alleges that on December 18, 2006, he was seen by the doctor, "and got the lidoderm patch ordered at noon as the medical staff continued to use unspecific doctor 'time' orders on lidoderm as excuse."  Plaintiff alleges that Hilts "ran back to the doctor and had doctor Phi change the times on the order to torture the Plaintiff into standing in a line to get medications for over 30 minutes."  (Am. Compl. ¶ 50.)

The opposition is supported by the declaration of Defendant Hilts.  Hilts declares that the patch at issue is a Lidoderm 5% patch.  Staff were required to apply the patch to the inmate, initial it, and include the date and time on the patch.  The patches are generally required to be applied for twelve hours, then removed for twelve hours.   Hilts advised Plaintiff that in order to ensure the medication was administered correctly in twelve hour intervals, it needed to be applied in the morning so that staff were available to remove it in the evening.  Hilts also informed Plaintiff that if proper dosage and time instructions were not followed, Plaintiff's health could have been endangered.  Any changes made to the timing of the medication administration was to prevent harm and to comport with the doctor's instructions.  Hilts spoke with prison physicians regarding the need to administer the medication in the morning so that medical staff could ensure proper application and removal.  (Hilts Decl. ¶¶ 4-6.)

Further, Dr. Igbinosa declares that if an inmate with valley fever receiving a Lidoderm 5% patch went without pain medications for twelve hours, although they may be in some discomfort, it would not cause them to be in an emergency condition.  This would be especially true for Lidoderm patches, which are generally required to be applied for twelve hours, then off for twelve hours.  It is important to follow the medical instructions to ensure that these patches are only on for twelve hours and then removed.  The most efficient time to administer Lidoderm 5% patches was in the morning pill line so that medical staff was on shift to ensure that the patches were removed in the evening.  Plaintiff did have some periods of time where his Lidoderm patches were applied at 12 a.m.   Plaintiff's medication administration records reflect that  he often failed to appear at the correct time to receive his medications. (Igbinosa Decl. ¶¶

23

30-32.)[7]

The Court finds that the evidence indicates that Defendant Hilts was not deliberately indifferent to a serious medical need of Plaintiff's.  The evidence indicates that Hilts administered Plaintiff's medication in accord with the physician's instructions and appropriate medical practices.

In his opposition, Plaintiff fails to specifically make an argument as to Defendant Hilts. The only argument regarding Defendant Hilts relates to Plaintiff's efforts at exhausting his administrative remedies.  The Court has reviewed the exhibits in support of Plaintiff's opposition, along with his declaration, and finds that Plaintiff has not met his burden on summary judgment.  Plaintiff has not come forward with evidence of a triable issue of fact - evidence that Hilts knew of and disregarded a serious risk to Plaintiff's health.  Plaintiff offers no evidence that Defendant Hilts failed or refused to properly administer Plaintiff's medication. Judgment should therefore be entered in favor of Defendant Hilts.

### G.   **Defendant Long**

Plaintiff alleges that Defendant MTA Long failed to follow doctor's orders to dispense certain medication to Plaintiff to treat his valley fever.  Specifically, the doctor prescribed "a lidoderm patch and narcotics," (Am. Compl. ¶ 51.)  MTA Long failed to dispense the medication "on numerous occasions."  Id.

In support of the motion for summary judgment, Defendant Long declares that at the time of the events complained of, Long was employed as the Third Watch MTA.  As such, Long administered medications to inmates, commonly known as "pill line."  Long was responsible for evening medication administrations.  Long declares that he completely relied on the information in the Medication Administration Record Logs, which records what medication was administered and when, as well as the staff member responsible.  (Long Decl. ¶¶ 2-5.)  Long specifically

---

[7]Exhibit 3 to Dr. Igbinosa's declaration includes copies of Plaintiff's medication administration record. The records indicated that Plaintiff failed to appear at pill line on 5 separate occasions in December of 2006 and January of 2007.

declares that he "never acted with the intent to cause harm to Solvey, or to interfere with medical orders for the purpose of causing harm." (Id. ¶ 8.)

The Court finds that Long has met his burden on summary judgment. The evidence submitted by Defendant Long indicates that he dispensed medication to Plaintiff in accordance with applicable policies and procedures. The evidence indicates that Defendant Long was not deliberately indifferent to a serious medical need of Plaintiff's.

In his opposition, Plaintiff fails to specifically make an argument as to Defendant Long's conduct. The only argument regarding Defendant Long relates to Plaintiff's efforts at exhausting his administrative remedies. The Court has reviewed the exhibits in support of Plaintiff's opposition, along with his declaration, and finds that Plaintiff has not met his burden on summary judgment. Plaintiff has not come forward with evidence of a triable issue of fact - evidence that Defendant Long knew of and disregarded a serious risk to Plaintiff's health. Plaintiff offers no evidence that Defendant Long failed or refused to properly administer Plaintiff's medication. Judgment should therefore be entered in favor of Defendant Long.

## H.   **Defendant Sellers**

Plaintiff alleges that Defendant LVN Sellers withheld medications. Plaintiff specifically alleges that during the month of September 2006, while A Facility was on lockdown, Sellers "continuously failed to administer pain medication to Plaintiff's cell as prescribed by the doctor. When Plaintiff attempted to inform the LVN Sellers of the times of the prescribed meds, LVN Sellers used arguments and excuses not to bring the forgotten meds to Plaintiff's cell." (Am. Compl. ¶ 55.)

The motion for summary judgment is supported by the deposition of Defendant Sellers. Sellers worked in two functions while employed at PVSP. Sellers administered medication to inmates, known as "pill line," until early September. Sellers was not employed at PVSP after early October, 2006.   Sellers worked second watch, and was therefore responsible for morning and noon medication administrations.   Thereafter, Sellers worked in the clinic where inmates

had their medical appointments, known as "doctor's line."  Sellers did, on occasion, work

overtime on third watch, administering medications in pill line.   Sellers recalls administering

medication to Plaintiff, though not a Lidoderm patch.  Sellers declares that Plaintiff would often

fail to appear at the proper time for pill line and would not receive his oral medication.  (Sellers

Decl. ¶¶ 1-4.)  Sellers specifically declares that "I never acted with the intent to cause harm to

Solvey, or to interfere with medical orders for the purpose of causing harm."  (Id. ¶ 5.)

Sellers refers the Court to the declaration of Dr. Igbinosa.  Dr. Igbinosa reviewed

Plaintiff's medical records, noting that "Solvey did not have a prescription that was filled for a

Lidoderm 5% patch in September 2006.  It appears that one was initially prescribed on

September 11, 2006.  The prescription was not issued until October 10, 2006." (Igbinosa Decl. ¶

27.)

The Court finds that Defendant Sellers has come forward with evidence that Plaintiff was

not deprived of his pain medication by Defendant Sellers.  The evidence indicates that he did not

have a prescription for the patch while Sellers was employed at PVSP.  Further, the evidence

indicates that Sellers did not interfere with Plaintiff's medication.

In his opposition, Plaintiff argues that Sellers "yelled at Plaintiff and acted with

oppression when Plaintiff sought to get his medication."   Plaintiff does not, however, come

forward with evidence that creates a disputed issue of fact as to whether he had a prescription for

a Lidoderm patch in September of 2006.  Plaintiff contends that Sellers acted with negligence in

by forgetting to issue medication, then oppression and deliberate indifference by refusing to issue

it.  In the face of the specific evidence offered by Sellers - that he did not have a prescription for

the medication in September of 2006 and that Sellers was not employed at PVSP in October of

2006 - the Court finds Plaintiff's allegations to be vague.  In order to meet his burden on

summary judgment, Plaintiff must come forward with evidence that creates a disputed issue of

fact as to whether he did in fact have a prescription for Lidoderm in September of 2006 and that

Sellers improperly deprived him of his medication.  Plaintiff has not come forward with such

evidence.  Judgment should therefore be entered in favor of Defendant Sellers.

## I.   **Defendant Chambers**

Plaintiff alleges that Defendant C/O Chambers intentionally deprived him of prescribed medication.  Specifically, Plaintiff alleges that on three separate occasions in March and April of 2006, Chambers searched Plaintiff's cell and removed the medication used by Plaintiff to treat his condition.  Plaintiff alleges that Chambers took the medication in violation of doctor's orders. Plaintiff was deprived of the medication for 30 days.  (Am. Compl. ¶ 58.)

In support of the motion for summary judgment, Defendant Chambers  submits his own declaration.   Chambers declares that, although he does not have any specific recollection of Plaintiff, he often confiscated inmate medication during routine and required cell searches. During such routine searches, it was Chambers' regular custom and practice to explain to the inmate, at least on the first occasion, that Chambers was required by prison regulations to confiscate medication if the packaging, inmate's name, CDC identification number, or expiration date, was altered, removed or past due.  Once Chambers confiscated the medication, he gave it to medical staff for disposal and told staff which inmate the medication came from.  Chambers declares that he never deviated from this process, and has never confiscated an inmate's medication with the intent to cause harm.  Rather, the purpose when taking the medication was to prevent any harm by misuse of medication.  (Chambers Decl. ¶¶ 5-8.)   In his deposition, Plaintiff concedes that he was aware that Chambers confiscated the medication because Plaintiff himself removed the medications from their original packaging, causing them to be mislabeled, and placed them in a cracker box.  (Solvey Depo. 33:23-25 – 34:1-18; 35:23-25 –36:1-7; 139:1-15; 141:3-6; pp. 145-147.)

The Court finds that Defendant Chambers has met his burden on summary judgment. The evidence submitted by Chambers indicates that whenever he confiscated any medication, he did so in accordance with policies and procedures.  The evidence indicates that Chambers did not improperly confiscate Plaintiff's medication.

1    In his opposition, Plaintiff fails to specifically make an argument as to Defendant

2    Chambers.  The only argument regarding Defendant Chambers relates to Plaintiff's efforts at

3    exhausting his administrative remedies.  The Court has reviewed the exhibits in support of

4    Plaintiff's opposition, along with his declaration, and finds that Plaintiff has not met his burden

5    on summary judgment.  Plaintiff has not come forward with evidence of a triable issue of fact -

6    evidence that Chambers improperly confiscated his medication.  Judgment should therefore be

7    entered in favor of Defendant Chambers.

8    **VI.**    **State Law Claims**

9    Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

10   jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the

11   action within such original jurisdiction that they form part of the same case or controversy under

12   Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under §

13   1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is

14   discretionary."  Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).  "The district

15   court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . .

16   the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

17   1367 (c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before

18   trial . . . the state claims should be dismissed as well."  United Mine Workers of Amer. v. Gibbs,

19   383 U.S. 715, 726 (1966).

20   Because the Court finds that Defendants are entitled to entry of judgment as a matter of

21   law on all of Plaintiff's federal claims, the Court should not exercise its supplemental

22   jurisdiction.  Accordingly, the Court recommends that plaintiff's state claims be remanded to

23   state court.

24   **VII.**   **Conclusion and Recommendation**

25   The evidence submitted by Defendants Yates, Igbinosa, Beels, Greene, Duty, Hilts, Long,

26   Sellers and Chambers establishes, without dispute, that Plaintiff has failed to exhaust his

27

28                                          28

available administrative remedies prior to filing suit.  Defendants have also come forward with evidence that establishes the lack of existence of a triable issue of fact.  The evidence submitted by Defendants establishes, without dispute, that none of the defendants knew of and disregarded a serious medical condition of Plaintiff's.  After reviewing all of Plaintiff's evidence submitted in opposition, the Court finds that Plaintiff has not met his burden on summary judgment.  Plaintiff has not come forward with any evidence that establishes a triable issue of fact.  Plaintiff offers no evidence that any of the defendants knew of and disregarded a serious medical condition of Plaintiff's.  Defendants are therefore entitled to judgment as a matter of law.

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment be granted, and judgment be entered in favor of defendants and against Plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.   The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).



IT IS SO ORDERED.

**Dated:   January 20, 2011**                          **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE